(No. 11412.—Decree affirmed.)
E. M. LUDEWICK *et al.* Appellants, *vs.* CAROLINE LUDE-WICK, Appellee.

*Opinion filed June 21, 1917.*

1. EQUITY—*when heirs may file bill to set aside assignment of deceased's personal property.* The heirs may file a bill to set aside an assignment of personal property by deceased where there are no debts or demands against the estate and no duties for an administrator to perform except to distribute the assets among the heirs.

2. ADMINISTRATION—*when question of necessity of administration cannot be raised for first time in Supreme Court.* In a proceeding in equity to set aside a deed and an assignment of personal property by the deceased, where the rights of the executor, under the will, to the personal estate or the necessity of administration are in no way put in issue by the pleadings or shown by the record, such questions cannot be raised for the first time on appeal to the Supreme Court.

3. DEEDS—*what does not indicate lack of mental capacity to execute a deed.* Evidence that memory is to some extent impaired by age does not, of itself, indicate a want of capacity to comprehend and transact ordinary business or make a valid conveyance of real estate.

4. SAME—*what evidence is entitled to most weight in action to set aside deed on ground of mental incapacity.* Opinions gathered from casual conversations with the grantor and incidents unconnected with business may have some weight in a proceeding in equity to set aside a deed on the ground of mental incapacity, but such evidence will not overcome testimony of other equally disinterested witnesses who had business transactions with the grantor and were equally well acquainted with him and with the transaction in question.

APPEAL from the Circuit Court of Christian county; the Hon. J. C. McBRIDE, Judge, presiding.

ARTHUR FITZPATRICK, for appellants.

J. E. HOGAN, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellants, E. M. and Jacob Ludewick, filed their bill in chancery in the circuit court of Christian county against appellee, Caroline Ludewick, their step-mother, to set aside a deed of conveyance of real estate situated in Pana, in that county, made to her December 8, 1915, and an assignment to her of a certain certificate of deposit for $2500 in the H. N. Schuyler State Bank of that city, made to her on March 9, 1916, by her husband, G. M. Ludewick, the father of appellants. The original bill charged the deed of conveyance was obtained by fraud and undue influence practiced upon G. M. Ludewick by appellee at a time when he was in such a condition, mentally and physically, that he did not know or understand what he was doing. Appellee answered the bill, denying its material allegations. Appellants then obtained leave to file an amendment to the bill, in which they further charged that for some years before his death G. M. Ludewick was of unsound mind and so incapacitated by old age that he was unable to transact his ordinary business and affairs; that appellee was his agent and transacted his business, and took advantage of his condition and forced him to sign the deed to her against his will, and that the same was a forgery and obtained by fraud and undue influence. The answer to the original bill was allowed to stand as the answer to the bill as amended. A replication was filed to the answer, and the cause was heard before the court and a decree entered dismissing the bill for want of equity. This appeal followed.

It is insisted that a court of chancery did not have jurisdiction to determine the issues involved with reference to the certificate of deposit, which was personal property, and that matter should have been determined by the probate

court. We have held that heirs may bring an action of this kind if there are no debts or demands against an intestate and no duties which an administrator could perform except to distribute the assets among the heirs. (*Moore v. Brandenburg,* 248 Ill. 232.) In the case at bar the deceased died testate and appellants were named as beneficiaries in his will. The rights of the executor, under the will, to the personal estate or the necessity of administration were in no way put in issue by the pleadings or shown by the record, and such question cannot be raised for the first time on appeal to this court.

G. M. Ludewick, the husband of appellee and father of appellants, was about eighty-four years of age at the time of his death, which occurred March 11, 1916. Appellee was his second wife and some twenty years his junior. They were married some thirty-five years prior to his death, and, so far as the evidence shows, lived happily together. No children were ever born as the issue of this marriage. Appellants are the children of the deceased by a former marriage. Prior to the time of the transactions in controversy Ludewick was the owner of a house and lot in the city of Pana, described as lot 4 in block 8, in Railroad addition to that city. He was also the owner of a certificate of deposit for $2500 in the H. N. Schuyler State Bank of that place. On April 22, 1915, he made and executed his last will and testament, in and by which he directed the payment of his just debts and funeral expenses and gave all his property, both real and personal, to his wife, to have and to hold during her natural life for her sole use and benefit, with power to sell so much thereof as was necessary for her support, and with the further provision that at her death the remainder of his property be given to his two sons, share and share alike. Thereafter, on December 8, 1915, he executed, acknowledged and delivered to his wife a deed conveying to her all of the real estate which he then owned.

With respect to what occurred leading up to the making of this deed, W. H. Aughinbaugh, the scrivener who drew the deed and took Ludewick's acknowledgment to it, testified that some two or three months before the deed was drawn Ludewick came to him and told him that he wanted a deed made; that he had made a will but thought perhaps it would be better to make a deed, which would settle all questions about the real estate so there would be no contest over it. He further testified that he was well acquainted with the deceased and that he came to the witness' office alone, where the deed was drawn and executed by him; that he had known the deceased for forty-five or fifty years and had transacted other business with him; that he was a man of very "solid opinions" and knew what he was doing when the deed was drawn and executed. He further testified he saw him three or four times a week after that; that he was well posted in politics and had a good memory; that he saw him in the morning of the day he transferred the certificate of deposit to appellee and talked with him about twenty minutes; that he seemed all right and in his opinion would know and understand an ordinary business transaction. He further testified that appellee had nothing to do with Ludewick's making the deed. H. N. Schuyler, the banker, who had known the deceased for forty-eight years or more and saw him frequently, testified to his competency to attend to and transact his ordinary business and affairs, and a number of other witnesses who knew him intimately also testified that in their opinion the deceased was competent to transact ordinary business until within a day or two of his death, which occurred on March 11, 1916.

The evidence on the part of the appellants was to the effect that their father had been seriously ill during the month of September, 1915; that he never regained perfect health after that sickness, and at times would be forgetful and have difficulty in remembering old acquaintances. No witness, however, testified that as a result of such sickness

his mental faculties were impaired to such an extent that he could not understand and transact his ordinary business and affairs. On the contrary, their testimony was largely to the effect that he did not seem to remember names and faces as well as before. This was not sufficient to show incapacity to transact the ordinary business and affairs of life or make a valid conveyance or other disposition of his property. Evidence that the memory is to some extent impaired by age does not, of itself, indicate a want of capacity to comprehend and transact ordinary business and affairs or make a valid conveyance of real estate. (*Riordan* v. *Murray,* 249 Ill. 517.) "The test of mental capacity necessary to enable a grantor to make a valid deed is, that he is capable of understanding, in a reasonable manner, the nature and effect of the act in which he is engaged. (*Lindsey* v. *Lindsey,* 50 Ill. 79; *Wiley* v. *Ewalt,* 66 id. 26; *Titcomb* v. *Vantyle,* 84 id. 371; *Willemin* v. *Dunn,* 93 id. 511; *English* v. *Porter,* 109 id. 285; *Perry* v. *Pearson,* 135 id. 218; 16 Am. & Eng. Ency. of Law,—2d ed.—624.) That he has such capacity may be shown by proof that he is capable of transacting ordinary business affairs wherein his interest is involved. If he has mental power to comprehend and protect his own interest in such ordinary business affairs, the tribunal to whom the question is submitted may regard him as competent to understand the nature and effect of the act of disposing of his property by deed. If he is lacking in that degree of comprehension it may well be regarded he is incapable of understanding the nature and effect of the act of disposing of his land to another." (*Ring* v. *Lawless,* 190 Ill. 520; *Fitzgerald* v. *Allen,* 240 id. 80.) We think the evidence clearly shows such capacity at the time the deed in controversy was made, and that appellee at no time ever had charge of his business and affairs or practiced any fraud or undue influence upon him, or in any way even attempted to induce him to make the deed in question to her. So far as the evidence shows, the

idea originated with him and was his free and voluntary act, done after months of deliberation, at a time when she was not present, and at a time, as the evidence shows, when he was fully capable of attending to his ordinary business and affairs. None of the elements necessary to show fraud or undue influence are present in this case, and in so far as the controversy relates to this transaction the decree of the circuit court is right and should be affirmed.

With respect to the other transaction, the evidence shows that on the morning of March 9, 1916, the deceased, who was then confined to his bed in his last illness, undertook to assign the certificate of deposit to his wife but was in such an enfeebled condition that he was unable to sign his name legibly. Appellee then called up a friend of the family, F. J. Pierce, and a Mrs. Pence, who came to the house. When Pierce came into the sick room Ludewick stated to him that he wanted to give his wife the certificate of deposit; that the money would be needed for funeral expenses and other expenses. He then tried to write his name on the certificate but was unable to do so, and Pierce, after talking to the banker about it over the telephone, wrote the deceased's name across the back of the certificate and held the pen while Ludewick touched it and made his mark. Mrs. Pence was also a witness to the transaction. The witnesses further testified that Ludewick was sitting up in bed at the time and repeated to them that he wanted to give the money to his wife. Appellee was present at this time but did not ask him to sign the certificate over to her. At that time she asked Pierce whether it would be necessary to have a codicil to the will, and he told her he thought not, inasmuch as Ludewick wanted to give her this money, but in order to make sure of it he called up Schuyler at the bank, who asked Pierce if Ludewick was in his right mind and knew what he wanted to do, and on being informed that he did know what he wanted, Schuyler advised Pierce that it would be all right, if Ludewick could

not control his hand, to have him sign it by his mark and have two witnesses to it. Pierce asked Ludewick what he wanted to do with the certificate, and he said he wanted to give it to his wife, and Pierce thought at the time the transaction took place Ludewick understood the transaction and knew what he was doing. Mrs. Pence, the other witness to his signature, testified that Ludewick knew her; that she talked with him; that he seemed conscious and certainly seemed to know what he was doing; that she saw him the next day after he signed the certificate, which was Friday, and shook hands with him and he spoke to her. His competency to transact ordinary business is also testified to by Aughinbaugh, as above stated, and by William Warren, who had known him a number of years and saw him frequently during his last illness and conversed with him. He testified that until within the last day or two prior to his death Ludewick was capable of transacting his ordinary business and affairs. To the same effect is the testimony of Rev. Combes, who lived about half a block from Ludewick and saw him every day during his last illness and conversed with him. He testified that so far as he could see he seemed to know what he was doing. Dr. Lorton, who attended Ludewick during his last illness, testified as to his capacity and capability of knowingly and understandingly transacting ordinary business, and that his death was brought on by old age. He further testified that he thought Ludewick knew and understood everything all right until probably the last day of his illness. Another witness, Miss Coffey, who roomed at the Ludewick house and saw him every day, testified that he recognized her every time she spoke to him until Saturday morning; that the transfer of the certificate of deposit was made on Friday, and that she thought his mental condition was all right at that time. Miss McCluny, the nurse who attended him during his sickness in September and the last day and a half of his last illness, testified that during that time he

was a very sick man but that he always knew her and was glad to see her; that he seemed perfectly bright and was certainly capable of transacting his ordinary business and affairs. Other witnesses who saw him a day or two before his death also testified that in their opinion at the time of the transaction in controversy he seemed as bright as usual and was capable of knowing and understanding his ordinary business and affairs.

While the evidence as a whole shows that Ludewick was in a very enfeebled physical condition at this time, we think the testimony of these witnesses sufficiently establishes the fact that he acted with sufficient knowledge and understanding in assigning the certificate to appellee to give validity to the transaction. No witness testified on behalf of appellants that they saw him at about the time the assignment was made, or that he lacked sufficient capacity at that time to knowingly and understandingly engage in such transaction. Appellants' case, in so far as each transaction is concerned, rests entirely upon the opinions of witnesses who had observed the gradual decline in the health of the deceased incident to old age, and consists of mere opinions gathered from casual conversations and incidents unconnected with any business transaction in which he was interested, and not from any observations made of him in transactions of ordinary business and affairs of his life. While this testimony is entitled to some weight, it cannot be permitted to overcome the evidence of other equally disinterested witnesses who had transacted business with him and who were equally well acquainted with him and competent to form an opinion as to his condition, and were present at the time of the transaction in question, or immediately before or after it, and testified that in their opinion he knew and understood the transaction in which he was engaged. There is no conflict in the testimony of the witnesses who saw him on the day when either of these transactions took place, as to his competency to knowingly and understand-

ingly transact his ordinary business. While his will does show that he at one time intended to give his wife but the life use of his property with the remainder to his children, the evidence shows that at some time subsequent to the making of such will, and prior to the making of the deed in question, he changed his mind in respect thereto and concluded to deed the real property and assign the certificate of deposit to his wife absolutely. The testimony of Aughinbaugh quite clearly shows a well-developed intention on the part of the deceased to give the bulk, if not all, of his property to his wife after his death. This is what he ultimately did. While the matter is not entirely free from doubt, we are unable to say, after an examination of all the evidence in the record, that such evidence does not preponderate in favor of appellee or that the court erred in entering the decree dismissing the bill for want of equity.

The decree of the circuit court will be affirmed.

*Decree affirmed.*