Bertha Kreger and Alice Orloff, Appellees, v. Helena Hart, Appellant.

Gen. No. 36,356.

Opinion filed June 30, 1933. Rehearing denied July 11, 1933.

OTTO C. RENTNER and HENRY F. ANTES, for appellant.

LOUIS P. MILLER, for appellees.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This appeal seeks the reversal of a decree of the circuit court finding that a trust had been created by the transfer of certain shares of stock of which he was sole owner by Adam Schaetzlein, the father of plaintiffs and defendant, to Helena Hart, defendant, and himself. in joint tenancy, and ordering defendant to execute the trust by dividing equally between herself and her sisters Bertha Kreger and Alice Orloff, plaintiffs, the securities so transferred, and also ordering an accounting of the trust property.

Plaintiffs' amended bill of complaint alleged that Adam Schaetzlein died testate November 8, 1929, leav-

ing him surviving plaintiffs and defendant; that for many years prior to his death he was the owner of the following shares of capital stock: 60 shares prior lien of the Middle West Utilities Company, 56 shares six per cent preferred of the Southwestern Gas and Electric Company, 15 shares seven per cent preferred of the Central States Power and Light Corporation and 40 shares prior lien of the Midland Utilities Company; that on or about July 4, 1926, and until on or about December 29, 1928, defendant made a continuing offer to accept from her father the aforementioned shares of stock, to hold them as trustee and to distribute them after his death in such proportions as his last will and testament might provide, or in the absence of any such provision, to divide them equally between his heirs; that in consideration of defendant's undertaking and agreement to administer the stock according to such arrangement for distribution, her father caused the shares of stock to be transferred to himself and defendant in joint tenancy in trust for his sole benefit during his lifetime and after his death for the benefit of the persons designated in his will, and upon his failure to so designate they were to be divided equally between plaintiffs and defendant; that the sole consideration for his transfer of the stock was her agreement to execute the trust; that defendant received the title to the securities and held same as trustee for herself and plaintiffs; that Schaetzlein, by his will, designated plaintiffs and defendant beneficiaries of his estate, share and share alike; that, although plaintiffs have demanded that defendant execute the trust by distributing the shares of stock and their proceeds according to the terms of the trust, she refused to do so and claims the same to be her individual property.

Defendant's answer denies that she holds any property in trust for herself and plaintiffs; avers that the shares of stock held by her in joint tenancy with her

father became her sole property upon his death by reason of her right of survivorship; contends that plaintiffs failed to show by clear, convincing, unmistakable evidence the intention of Adam Schaetzlein to create the trust as alleged for the equal benefit of plaintiffs and defendant; and that the evidence shows conclusively that the transfer of the securities to defendant by her father was a gift to her.

Plaintiffs contend that defendant procured the transfer of the securities to herself and her father in joint tenancy through false representations, assurances and promises, intending to prevent a testamentary bequest to them; and that, inasmuch as she refused after the death of her father to comply with her promises, and claims to hold the property in her own right, equity will enforce the obligation assumed by her by impressing a trust upon the property in favor of plaintiffs, whom she seeks to defraud.

The evidence disclosed that Schaetzlein executed orders transferring the aforementioned stock to himself and defendant in joint tenancy and that certificates of stock were issued in the names of defendant and her father in compliance with the terms of the orders; that these certificates were continuously in the possession of defendant from the time of their issuance until her father's death and thereafter until she surrendered them for the purpose of having certificates issued in her own name; that at the time of the joint tenancy transfer she and her father signed a dividend order directing that the dividends on the stock be paid to him during his lifetime; that defendant transacted much of her father's business for him, especially during the last few years of his life, and that shortly before his death he made a new will revoking his former will and naming the First National Bank as executor of his estate. His last will and testament which was admitted to probate contained the following provision:

"I give, devise and bequeath to my three daughters all my estate, real and personal, to be divided between them, share and share alike."

It appeared that Adam Schaetzlein, the father of the parties to this proceeding, lived with Bertha Kreger, one of the plaintiffs, at the time of the death of his wife in July, 1926, and that he continued to live with her until his death; that he was between 77 and 78 years old when his wife died and nearly 80 years old at the time of his death; that July 4, 1926, a few days after the death of Mrs. Schaetzlein, defendant, Adam Schaetzlein, plaintiffs, and a daughter of Bertha Kreger, met for dinner at the Schaetzlein-Kreger home. Bertha Kreger and Alice Orloff, plaintiffs, and the daughter of Bertha Kreger, testified with slight variation, but all substantially to the same effect that on that occasion, after the subject of the disposition of Schaetzlein's property had been mentioned, defendant stated that she had consulted with a Mr. Horan, who suggested that the payment of inheritance taxes on her father's estate might be avoided or minimized by the transfer of his stocks to defendant and himself in joint tenancy, and that if her father made such transfer she would divide the stocks equally with plaintiffs after her father's death. Plaintiffs further testified that from the time of their mother's death defendant persisted in urging her father to transfer the stocks to her in joint tenancy with him to avoid the payment of inheritance taxes and to facilitate the disposition and division of the securities after his death; that between Christmas, 1928, and the following New Year's day, defendant insisted that her father execute the agreement making her a joint tenant with him of the title to the stocks for the same reasons heretofore stated, and that when defendant originally importuned their father to make the transfer he said "No," and that in answer to her subsequent demands he said he would look into the matter.

Charles L. Mahoney, a reputable member of the Chicago bar, who had previously represented defendant's father and was a disinterested witness, testified that in the spring of 1928, a day or two after her father had visited his office, defendant (apparently having her father under surveillance) visited him and inquired if her father had made a new will, and that he told her that her father had discussed with him the subject of his will and stated that his children were quarreling about the executrix named in the then existing will, who was defendant. This witness further testified that defendant stated that she thought it would be a good thing to have her father fix his stock so it would go to her at his death and it could be distributed by her without the payment of inheritance tax; that he, after inquiring and being advised as to the probable value of her father's estate, told her he did not see the necessity of any transfer of her father's stock under the circumstances.

Defendant in her testimony denied the testimony of plaintiffs' witnesses, asserting that she never at any time urged or attempted to persuade her father to execute the joint tenancy agreement with her for the purpose of avoiding the payment of inheritance taxes, and that she never promised him that she would divide the shares of stock equally between plaintiffs and herself after his death. No effort was made by her in her testimony to explain the circumstances attending the joint tenancy transfer of the stocks or to advance any reason why her father desired to bestow on her after his death the title and ownership of the stock to the exclusion of her sisters.

Anna Richter was the only other witness produced in defendant's behalf, and her testimony was apparently offered for the purpose of showing the reasons and motive that actuated Schaetzlein in making the transfer of stock to her in joint tenancy with him. The

testimony of this witness, however, was so improbable, extraordinary, and fanciful that the master in chancery, to whom the cause had been referred, and the trial court, were fully justified, in our opinion, in disregarding it *in toto.*

The evidence in this cause is not only clear and convincing, but it is conclusive, that the defendant embarked on a well charted course of deception and cajolery to induce her father to transfer the securities heretofore described to defendant and himself in joint tenancy, so that she would be the sole beneficiary of same in fraud of the rights of her sisters, who with herself were the only heirs of Adam Schaetzlein. It also clearly shows that beginning immediately after her mother's death, and for a period of almost two years, she sought to prevail upon her father to make the desired transfer by falsely representing to him that by so doing his estate would avoid the payment of inheritance tax and that such a transfer of his certificates of stock would facilitate their distribution by her, inasmuch as she was the executrix under his then existing will; and that she promised, if he made such transfer, she would, after his death, divide the shares of stock equally with her sisters, the plaintiffs.

No contention is made by defendant that her father received any consideration from her for including her in the joint tenancy title to the stock, and we are convinced that she finally prevailed upon her aged and infirm father to make the·transfer only through artifice and her persistence in falsely representing to him, that under all the circumstances, it was the best thing for him to do to conserve his estate and deceiving him into believing that after his death she would divide the securities equally with her sisters. The record discloses no consideration for the joint tenancy transfer to her except her agreement to share the stock with her sisters after their father's death. His inten-

tion that the stock sould be divided equally between his daughters is manifested by his will, as well as by the clear preponderance of all the evidence.

Defendant urges that, inasmuch as Adam Schaetzlein did not in appropriate language expressly create a trust in the securities for the benefit of plaintiffs, the transfer to her must be held to be a gift *inter vivos*. There is no merit in this contention. Plaintiffs' theory is not that an express trust was created by their father, but that a court of equity will raise a trust, by construction, out of the acts, intentions and relations of the parties, and the facts and circumstances of the case, and will not permit one who has obtained the legal title to property through intentional false representations and fraudulent promises to profit by his deceit to the detriment of the intended beneficiary.

In *Larmon v. Knight,* 140 Ill. 232, 236, it was held whenever a person acquires the legal title to property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose and, having thus fraudulently obtained the title, he retains, uses and claims the property as absolutely his own, the whole transaction by means of which the ownership is obtained will be treated in equity as a scheme of actual deceit, and under such circumstances a court of equity will treat the person so acquiring the legal title as a trustee and decree him to hold the title for the benefit of the true beneficiaries.

The courts of this and sister states have consistently held that whenever a person obtains a legal title to property, which he ought not to have secured under the rules of equity and good conscience, by means of fraud, a court of equity will impress a trust on such property in favor of those intended by the donor to be beneficiaries of same.

In *Stahl v. Stahl,* 214 Ill. 131, 140, 141, the Supreme Court in the following language adopted the rule laid down in Pomeroy's Equity Jurisprudence:

" 'Whenever a person procures a devise or bequest to be made directly to himself,—and thereby preventing, perhaps, an intended testamentary gift to another —through false and fraudulent representations, assurances or promises that he will carry out the original and true purpose of the testator, and will apply the devise or bequest to the benefit of a third person who is the real object and who would otherwise have been the actual recipient of the testator's bounty, and after the testator's death he refuses to comply with his former assurances or promises but claims to hold the property in his own right and for his own exclusive benefit, in such case equity will enforce the obligation by impressing a trust upon the property in favor of the one who has been defrauded of the testator's intended gift, and by treating the actual devisee or legatee as a trustee holding the mere legal title, and by compelling him to carry the trust into effect through a conveyance to the one who is beneficially interested.' We think it can make no difference whether the title is obtained by will or by deed, and see no difference, in principle, between the case stated by the author and the case at bar."

And in *Ahrens v. Jones,* 169 N. Y. 555, 62 N. E. 666, where the wife obtained a deed from her husband by a promise to pay out of the property deeded $1,000 to each of his two grandchildren, and afterward refused to carry out the promise, the court said:

"This is an attempt to perpetrate a fraud not only upon her husband, who was induced to make the gift to her by reason of her promise, but also upon the plaintiff, who presumably would have been otherwise provided for by her grandfather had it not been for the defendant's promise. It is true there is no express trust created by the deed, or by the promise made by the defendant, but, notwithstanding this, a court of equity is not bereft of power to act, for it may interpose to prevent a wrong, and for that purpose it may

declare the grantee a trustee *ex maleficio* for the protection of the grantor's intended beneficiaries. Such a trust does not affect the deed, but acts upon the gift, as it reaches the possession of the grantee, and the foundation for the trust is that equity will then interfere and raise a trust in favor of the persons intended to be benefited in order to prevent a fraud.''

In our opinion the cases relied upon by defendant are not in point. Those cases, it will be found upon examination, are cases in which no fraud, actual or constructive, was found to exist.

We think that the trial court was entirely warranted in holding that the stocks in question were transferred to defendant and her father in joint tenancy for the purpose of establishing a trust for the benefit of his daughters equally after their father's death.

For the reasons stated we are of the opinion that the trial court did not err in entering the decree and it is affirmed.

*Affirmed.*

GRIDLEY and SCANLAN, JJ., concur.