Edna Kriegel et al., Appellants, v. Sylvia Ann Miedema et al., Appellees.

Gen. No. 47,487.

First District, First Division.

January 26, 1959.

Released for publication February 19, 1959.

Walter Hamilton, of Chicago, for plaintiffs-appellants.

Jaros & Tittle, of Chicago, for certain defendants-appellees.

JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order sustaining a motion to strike the amended complaint and dismissing the suit. Suit was brought to establish the heirship of Charles L. Klima, Sr. (hereinafter called Senior) and Charles L. Klima, Jr. (hereinafter called Junior); to set aside transactions between Senior and Junior; to distribute property to be recovered from the heirs of Junior for the benefit of the heirs of Senior; to establish a constructive trusteeship in defendant Sylvia Ann Miedema; to require her to account for certain insurance premiums collected from 1941 to date and for the value of business furniture and equipment conveyed in 1941; and to account for the difference between the price paid for a building sold by Senior to Junior in 1941 for $27,000, and sold by Junior in 1950 for $75,000.

The transactions in question took place in 1941. The principals are both dead, the father having died August 29, 1945, and the son on September 17, 1951. After Junior's death, his widow Sylvia married one Miedema. Thereafter, this suit was commenced in 1955. Plaintiffs are the widow and two daughters of Senior. Defendants are Junior's widow and children. The transactions sought to be set aside appear to be the following:

(1) A bill of sale (not attached or pleaded in haec

verba) sometime in March or April 1941 to office furniture and equipment used by the Clyde Building and Loan Association (Association) in the conduct of its business; (2) A transfer, apparently oral, of an insurance business; and (3) A deed made six months later, October 18, 1941, from Senior to Junior to a building occupied by the Association. It is also stated, as if it were part of the bill of sale, that management of the Association was transferred from Senior to Junior, but this is negatived by a later averment that the Board of Directors did not elect to put him in charge.

With respect to the furniture, equipment and management of the Association, plaintiffs charge an oral promise by Junior to convey the same back to Senior when Senior returned from treatment in a hospital. With respect to the real estate, they charge that the price was "wholly inadequate." A general charge is made of "fraud, undue influence, obtaining property by betrayal of a fiduciary relationship and . . . taking advantage of their [Junior's parents] necessities. . . ."

The charges of the complaint are made in vague and general language and at times are confusing and contradictory. It appears that in 1941 Senior was 74 years old and had been afflicted with stomach ulcers for about thirty years; that he had been in charge of the business of the Association which he had organized years before; that Junior and his wife, by persistent argument and persuasion sought to have Senior turn over to Junior the business of the Association and the insurance business; that in March 1941 Senior had to go to the hospital for ulcer treatment, and he then gave Junior a bill of sale to furniture and equipment used by the Association, placed him in charge of the business of the Association, and gave him the insurance

238

business upon Junior's promise to give them all back when Senior returned.

What is meant by the business of the Association is not clear. The Board of Directors was in control of the Association, and the complaint alleges that they *did not* appoint or elect Junior to be the executive head of the business. This inconsistency is not explained.

Senior returned from the hospital in April 1941 and, according to the complaint, demanded of Junior to be reinstated in the insurance business and in the operation of the Association and demanded the return of the office furniture and equipment, but Junior refused to comply with those demands. Six months later, in October 1941, Senior sold the building in which the Association was located to Junior and his wife for $27,000, but the deed of conveyance named the price as $35,000. At another point in the complaint the language makes it appear that the real sales price was the amount stated, $35,000. On July 3, 1950, nine years after the transaction and five years after Senior's death in 1945, Junior sold the building to the Association for $75,000. On September 17, 1951, Junior died and left as his heirs his wife Sylvia, now Sylvia Ann Miedema, and a minor son and daughter.

 A court of chancery has jurisdiction to distribute an intestate estate to the rightful heirs when all debts of the deceased and the funeral expenses have been paid and the only question involved is a determination of the rightful heirs, their respective interests, and distribution accordingly. Moore v. Brandenburg, 248 Ill. 232, 93 N. E. 733 (1911); Jordan v. McGrew, 400 Ill. 275, 288, 79 N.E.2d 622 (1948); Ludewick v. Ludewick, 279 Ill. 26, 116 N. E. 709 (1917). Defendants base their defense on the ground that the complaint fails to show any actual fraud or undue influence or that a fiduciary relationship existed or was violated, and that the complaint on its face shows laches.

The first item to be considered is the bill of sale, so-called. This is stated in the complaint to have been of the business furniture and equipment used by the Association and the insurance business, and the placing of Junior in charge of the business of the Association (sic). What was meant by the insurance business and placing him (Junior) in charge as the subjects of a restitutional process are so indefinite as not to be comprehensible. Nothing is said as to the character of the business furniture and equipment, what it consisted of, or its value.

Plaintiffs' theory is that an oral promise was made by Junior to convey those things back to Senior when he came out of the hospital; that Junior had no intention at the time to reconvey the property, and that the making of a promise with a present intention not to perform can be made the basis for fraud. All that is advanced to support the charge is that Junior's failure to keep the promise in itself reveals that he never had any intention of so doing.

██ ██ Something more than failure to keep the promise must be shown to prove a fraudulent intent. In Luttrell v. Wyatt, 305 Ill. 274, 137 N. E. 95 (1922) cited by plaintiffs, the court said that where the subsequent conduct of a promisor raises a presumption that the contract was fraudulent in its inception and shows that he had no intention of carrying out his promise, and when the promise was accompanied by false representations, the court could regard the promise as a part of the fraud. In Kreger v. Hart, 271 Ill. App. 352 (1933), also cited by plaintiffs, the court found that the evidence showed that the defendant had embarked on a well-charted course of deception and cajolery and falsely represented to her father that by giving her a deed his estate would avoid payment of inheritance taxes and that it would facilitate the distribution of

240

the estate to all his children. In the other cases cited by plaintiffs there were facts and circumstances of far greater amplitude to support the charge of fraud than are here presented.

██ There is nothing in the instant case to support the charge, except the fact that Junior did not keep his promise. If this case were to be submitted for trial, the court would have to inquire into the state of a man's mind more than seventeen years ago and seven years after his death and, in fact, after both principals in the transaction have died. Such a probe would require a soothsayer with a divining rod. It is true that the subject of a man's mind is a fact which may be proved as any other fact when certain issues such as belief or reliance upon representations are involved. But a strong and persuasive case must be made before a court will commence an inquiry of this character so long after the actual transactions, with the deaths of the principals and other circumstances intervening.

██ The one item on which there is an attempt to show value in specific terms is the building. It is charged that the consideration was wholly inadequate because the building cost Senior $60,000, but the complaint as set forth in the abstract nowhere shows when Senior purchased the building. It is stated in plaintiffs' briefs that it was sold by Junior "a short time thereafter [after his purchase] for $75,000." The "short time" was nine years, during which the Second World War intervened. Courts have taken judicial notice of the fact that in that period there was a tremendous rise in the market for real estate, and a showing of a large increase in value is in itself no evidence of inadequate consideration. Burrows v. Palmer, 10 Ill.2d 344, 356, 140 N.E.2d 668 (1956); Finn v. Monk, 403 Ill. 167, 85 N.E.2d 701 (1949); Kapraun v. Kapraun, 12 Ill.2d 348, 355, 146 N.E.2d 7 (1957).

241

■ Language such as "wholly inadequate" or "grossly inadequate" has been used in opinions of courts when fraudulent conveyances have been set aside, but always to characterize transactions the particulars of which were before the court. It is not enough, standing alone, to support a charge of fraud or violation of a fiduciary relationship. In this instance it does not stand alone. Nothing is said about the age of the building, its income, its market value in 1941, nor, indeed, anything from which its value might be established.

■ A fiduciary relationship does not exist between a parent and a child as a matter of law. Bodin v. Mattingly, 8 Ill.2d 487, 489, 134 N.E.2d 814 (1956); Freymark v. Handke, 415 Ill. 360, 363, 114 N.E.2d 349 (1953). The charge of breach of fiduciary relationship which is alleged in these transactions is supported only by what purports to be the insistence of Junior that Senior should give up the active conduct of the business. This is compatible with an honest intention on Junior's part when we consider that Senior was 74 years old and had suffered from ulcers for thirty years.

■■ The entire action is subject to the defense of laches, pleaded by defendants in their motion, in accordance with the provisions of the Civil Practice Act [Ill. Rev. Stats. 1957, ch. 110]. In actions for restitution, laches depends upon an affirmative answer to two questions: First, has the party seeking restitution been unreasonable in his delay after learning the facts; and, second, has the delay made it unfair to permit the suit because a hardship would result to the defense because of a change of circumstances or because there would be a substantial chance of reaching an erroneous decision as to the true facts. (Restatement of the Law, Restitution, Ch. 8, par. 148, p. 589.)

In the instant case plaintiffs knew the facts from the time the transactions were made in 1941. No action was taken by Senior, although he lived for five years after that, and no action was thereafter taken by Senior's widow during Junior's lifetime, that is, for a period of ten years after the transactions. Then it was five years more before this suit was commenced. Clearly, such a delay was unreasonable. No one can supply the testimony which could have been given by the two dead principals. The promises upon which the suit is based were oral, and after a lapse of more than sixteen years, the prospect of reaching an erroneous decision is substantial. All the conditions required to support a plea of laches are revealed by the complaint itself.

 The Statute of Limitations provides that actions such as this should be commenced within five years after accrual. (Ill. Rev. Stat. 1957, ch. 83, par. 16, sec. 15.) If a person entitled to bring such an action dies before the expiration of the time limited and the cause of action survives, it may be commenced by his representatives after the expiration of that time and within one year after his death. (Ill. Rev. Stat. 1957, ch. 83, par. 20, sec. 19.) As a general rule, equity will follow the law in limiting the period within which a suit may be brought. Trustees of Schools v. American Surety Co., 307 Ill. App. 398, 406, 30 N.E.2d 513 (1940); Dean v. Kellogg, 394 Ill. 495, 504, 68 N.E.2d 898 (1946); Walker v. Ray, 111 Ill. 315, 322 (1884). In this case over fifteen years have elapsed, three times that limited by statute. Obviously, by all current standards of law or equity, the suit is stale.

Order affirmed.

McCORMICK, P. J. and DEMPSEY, J., concur.