R. E. LINDER STEEL ERECTION CO., INC. et al., Plaintiffs

v.

ALUMISTEEL SYSTEMS, INC. et al., Defendants.

The SHERMAN R. SMOOT COMPANY, INC., Cross-Plaintiff

v.

ALUMISTEEL SYSTEMS, INC. et al., Cross-Defendants.

Civ. A. No. J–79–1872.

United States District Court, D. Maryland.

Dec. 11, 1980.

Robert Sloan, Baltimore, Md., for plaintiffs.

Alan I. Baron, Baltimore, Md., J. Jeffrey McNealey, Columbus, Ohio, for Fireman's Insurance Co. of Newark and The Sherman R. Smoot Co.

Howard G. Goldberg, Baltimore, Md., for Marine Midland.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

This case arises out of the construction of the Social Security Administration building in downtown Baltimore. The Government contracted with The Sherman R. Smoot Company (Smoot) for exterior masonry work, and Smoot entered into a subcontract with Alumisteel Systems, Inc. (Alumisteel) for a portion of that work. Alumisteel in turn subcontracted for a portion of its work

with R. E. Linder Steel Erection Co., Inc. (Linder). Linder brought this action against Alumisteel, on diversity grounds, for breach of contract in failing to pay a portion of the contract price; and against Smoot and Fireman's Insurance Company of Newark, New Jersey, under 40 U.S.C. §§ 270a and 270b, as principal and surety on the payment bond for the project.

Smoot has filed a cross-claim against Alumisteel and Marine Midland Bank (Marine Midland). It claims against Alumisteel for indemnity and breach of contract. It also claims, in a separate count, against Alumisteel and Marine Midland, reciting that Alumisteel assigned to Marine Midland $100,000 of the monies due it under the contract with Smoot and that Marine Midland was to advance funds to Alumisteel, to be treated as trust funds for payment of claims of subcontractors and others for work on the contract. Smoot alleges that in reliance on the agreement it made payments to Alumisteel and Marine Midland, on the understanding that the funds would go first to pay claims, but the funds were not used to pay subcontractors and others and were misappropriated by Alumisteel and Marine Midland.

Marine Midland moved to dismiss the Smoot cross-claim on the grounds of improper venue; lack of personal jurisdiction; an objection styled "service of process" that objects to this being handled as a cross-claim, rather than a third-party claim, and failure to state a claim against it. A hearing on the motion was held August 28, 1980.

## I. *Failure to State a Cause of Action.*

■ Marine Midland's motion to dismiss for failure to state a cause of action is predicated on an exculpatory clause of the assignment contract stating that nothing in the contract is to be construed as imposing any duty on the bank to see to proper application of the monies advanced to Alumisteel. A motion under F.R.Civ.P. 12(b)(6) must be denied if the facts stated are such that plaintiff might be able to prevail on some legal theory. It must appear "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see* 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil,* § 1357.

■ Smoot has asserted a claim in the nature of a fraud or conversion action. Whether it has stated a claim in this action will depend on New York or Ohio law. Under *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), reaffirmed in *Day and Zimmerman, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975), the conflict laws of the forum state determine which law is followed where the question is one of state law. *See* 1A *Moore's Federal Practice,* ¶ 0.311[i]. Maryland adheres to the traditional strict rules of conflicts, holding that the law of the place of the tort governs tort claims, e. g., *Frericks v. General Motors Corp.,* 274 Md. 288, 296, 336 A.2d 118 (1975). It is unclear as a matter of fact and law where the tort occurred or would be deemed to occur. Thus, New York or Ohio law may apply to the tort claims. It cannot be said at this stage what law will apply, and it cannot be said that Smoot will be unable to prove facts entitling it to recover in a fraud or conversion theory under New York or Ohio law. The motion to dismiss must be denied.

## II. *Improper Service.*

■ Marine Midland objects to service, apparently on the underlying ground that the claim against it should have been asserted as a third-party claim under Rule 14 instead of a cross-claim under Rule 13. Smoot asserts the cross-claim is proper, but requests leave, alternatively, to amend and serve a third-party claim on Marine Midland.

A cross-claim may be asserted against a co-party if it arises out of the transaction or the occurrence that is the subject matter of the original action or of a counterclaim. F.R.Civ.P. 13(g). Additional parties may be joined, subject to the provisions of Rules 19 ("necessary" party) and 20 ("permissive" party). There is no question, since both

Alumisteel and Marine Midland are alleged to have misapplied funds, that Marine Midland would be a proper party to be joined with Alumisteel. It must first be determined whether Count Three is a proper cross-claim.

A cross-claim arises out of the same transaction or occurrence as the original claim if it bears a "logical relationship" to it, *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). "Transaction or occurrence" may be a series of occurrences. *Id.* The general rule is that courts look to the entire complex of related facts, not just the facts alleged in the original claim. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil*, § 1432, at 170–74 (1971).

The Sixth Circuit held cross-claims proper in a case similar to the present one. *Lasa per L'Industria del Marmo Soc. per Azioni v. Alexander*, 414 F.2d 143 (6th Cir. 1969). The complaint was an action for failure to pay for marble supplied by a sub-subcontractor against the subcontractor with which it contracted, the general contractor, and the surety and principal on the performance and payment bonds. This triggered counterclaims and cross-claims by and among all the parties on the construction job. The architect was brought in on a third-party claim treated as a cross-claim. The defendant subcontractor joined with its claims against the general contractor and the architect counts alleging malicious injury of its business reputation. The Court found a "logical relationship" between the cross-claims and the transaction or occurrence of the original action: "all relate to the same project and to problems arising out of the marble used in the erection of the Memphis City Hall." *Id.* at 147. Although the claim asserted against Alumisteel and Marine Midland relates to a financing agreement collateral to the construction contract and subcontract, Smoot asserts that it relied on the agreement in paying Alumisteel, which failed to pay its subcontractors. This claim is sufficiently related to the set of problems relating to this construction project to arise out of the same "transaction." The count is properly asserted as part of the cross-claim against Alumisteel. Service on Marine Midland, therefore, was proper.

## III. *Venue.*

The objections pressed by Marine Midland are lack of venue and of personal jurisdiction. They are considered here out of logical order (venue not arising unless there is jurisdiction) because the venue question may be dispositive.

The National Bank Act, 12 U.S.C. § 94, provides: "Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established . . . ." A national bank is "established" in the district in which it is chartered. *See Citizens and Southern National Bank v. Bourgas*, 434 U.S. 35, 39, 98 S.Ct. 88, 91, 54 L.Ed.2d 218 (1977) (noting general rule of lower federal courts).

Smoot first argues that 12 U.S.C. § 94 does not apply because Marine Midland was not a national bank at the time the cause of action arose, citing *Snyder v. Eastern Auto Distributors, Inc.*, 357 F.2d 552 (4th Cir. 1966). *Snyder* does not stand for a general rule that venue is determined at the time a cause of action arises. It involved somewhat the converse of the situation here; defendant had done business in the state but withdrew before service of the complaint. The Fourth Circuit held that the time to be considered for venue was when the cause of action arose, the defendant remaining answerable in the district for its activities there for a reasonable time after it had left. Since *Snyder* is not applicable to the facts in this case, the general rule that "residence" for purposes of venue is determined at the time of suit applies. It is undisputed that Marine Midland was a national bank at the time of suit.

■ Smoot also argues the doctrine of ancillary venue applies to this case and thus that the Bank, as cross- or third-party defendant, may raise no venue objection. The doctrine of ancillary venue is that where

venue of the original action is proper, a venue statute does not apply to a counter, cross-, or third-party claim ancillary to the original action. That is, the party against whom such claims are brought may raise no venue defense, because venue statutes apply only to an original action. 1 *Moore's Federal Practice*, ¶ 0.140[6]; 3 *id.* ¶ 14.28[2]; 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil*, §§ 1433, 1445 (1976); 15 *id.* § 3808; *e. g., McConigle v. Penn Central Transp. Co.*, 49 F.R.D. 68 (D.Md. 1969). Marine Midland points to the language of the statute, which refers to "actions and proceedings" against national banks. It argues that the cross-claim is, if not an "action" against it, at least a "proceeding."

The Bank's interpretation is not compelled by the words of the statute. "Action" usually means an original suit. *Black's Law Dictionary*, 26 (5th ed. 1979). "Proceeding" has a more general meaning; it may refer to any step taken by a court in the course of an "action." The word certainly bears the interpretation urged by the defendant. Its technical and older meaning is an original matter, independent of an "action" or not qualifying as an "action" in the traditional sense. *Id.* at 1083–84. The statutory term, dating from the original 1864 version of the statute, bears this meaning also.

Several federal district courts, and one state court, have considered the applicability of 12 U.S.C. § 94 to third-party claims against national banks[1], and the results reached are conflicting. *Compare Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc.*, 358 F.Supp. 1001, 1004–05 (N.D. Ill.1973); *Swiss Trade Israel Bank v. Mobley*, 319 F.Supp. 375 (S.D.Ga.1970); *Lazarow, Rettig & Sundel v. Castle Capital Corp.*, 49 N.Y.2d 508, 427 N.Y.S.2d 404, 404 N.E.2d 130 (1980) *with Petrizzio v. United States*, 492 F.Supp. 752 (D.N.J.1980); *Hern-*

*don v. Herndon*, 491 F.Supp. 53 (W.D.Tex. 1980); *Jones v. Kreminski*, 404 F.Supp. 667 (D.Conn.1975); *Odette v. Shearson, Hammill & Co.*, 394 F.Supp. 946 (S.D.N.Y.1975). The conflicting rationales are those the parties have argued: that a third-party claim is an action, as is an original suit, *e. g., Lazarow, Rettig & Sundel v. Castle Capital Corp.*, 49 N.Y.2d 508, 427 N.Y.S.2d 405–06, 404 N.E.2d at 131–32; or that the statute is not reached because a third-party defendant has no venue objection, *e. g., Odette v. Shearson, Hammill & Co.*, 394 F.Supp. at 951–52.

■ After examination of all the cases cited, this Court is persuaded by the reasoning of those courts that have upheld venue on the ground that a party to an ancillary proceeding may raise no venue objection. The reasoning is particularly compelling in this action.

Plaintiff had no choice as to where to bring this action. Its Miller Act claim had to be brought in the district in which the contract was to be performed "and not elsewhere." 40 U.S.C. § 270b(b). The whole notion of ancillary jurisdiction and venue is that one court should try all matters relating to the original action. It would make little sense to try the cross-claim against Alumisteel elsewhere. Since the cross-claim alleges that Alumisteel and Marine Midland together misappropriated monies supposed to be applied to the contract, it would likewise make no sense to try the portion of the cross-claim relating to Marine Midland elsewhere.

### IV. *Personal Jurisdiction.*

Marine Midland states in its motion to dismiss that it has no office in Maryland, writes no loans in the State of Maryland, and maintains no permanent presence here. It also notes that the transaction between it and Alumisteel occurred in the State of

---

1. There are also cases involving counterclaims, *First Nat'l Bank & Trust Co. in Macon v. American Sec. & Trust Co.*, 437 F.Supp. 771 (D.D.C. 1977); *First National City Bank v. Nanz, Inc.*, 437 F.Supp. 185 (S.D.N.Y.1975); *First Nat'l Bank of Minneapolis v. White*, 420 F.Supp.

1331 (D.Minn.1976). The situation in which a bank has itself sued in the district is significantly different from the situation in which it is brought into the forum by a party to the original action.

New York, the only connection with Maryland being the recording of the assignment here. Although no affidavits were submitted, the issue of personal jurisdiction has been properly raised. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil*, § 1351, at 565–66. The burden is on the plaintiff to establish personal jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Where there is no factual material in evidence, plaintiff may meet its burden with considerably less than the showing required if there were evidence on jurisdiction. Smoot here asserts that even if all the facts alleged by Marine Midland are true, there may be personal jurisdiction. This appears to be true. *See, e. g.*, Md.Cts. and Jud.Proc.Code § 6–103(b)(4) (1980). Smoot also has pointed, in oral argument, to the facts that under the assignment in question the bank was appointed attorney-in-fact to collect monies due, the assignment was recorded here, and the construction job to which the loan related was located here.

The Court is unwilling to rule on personal jurisdiction on the present state of the record. Marine Midland has offered to submit affidavits in support of its contentions, and it should do so. The question of jurisdiction will be deferred until affidavits have been submitted.