**HOLLYMATIC CORPORATION, Plaintiff,**

v.

**HOLLY SYSTEMS, INC., Marvel Inc., and Harry H. Holly, Defendants.**

**No. 85 C 2598.**

United States District Court, N.D. Illinois, E.D.

Oct. 29, 1985.

Dean A. Dickie, Fay Clayton, Lucy J. Karl, Douglas R. Newkirk, Sachnoff Weaver & Rubenstein, Chicago, Ill., for plaintiff.

R. Dickey Hamilton, Stephen J. Bisgeier, Barry A. Miller, Catherine H. McMahon, Miller Shakman Nathan & Hamilton, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

This case involves a commercial dispute between former associates in the meat processing industry. Plaintiff-counterdefendant Hollymatic Corporation ("Hollymatic") filed a complaint alleging unfair competition, breach of contract, trademark infringement, and violations of the Illinois Deceptive Trade Practices, Consumer Fraud, and Anti-Dilution Acts. Defendants-counterplaintiffs Harry Holly ("Holly") and Holly Systems, Inc. ("Holly Systems") countered with charges against Hollymatic of breach of contract, fraud, intentional interference with prospective eco-

nomic advantage, product disparagement, and violation of the Sherman Act and the Illinois Deceptive Trade Practices Act.[1] Both sides seek damages and injunctive relief.

Before us is Hollymatic's motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), Counts II (fraud) and V (product disparagement) of the amended counterclaim. For the reasons stated herein, the motion is granted as to Count II and denied as to Count V.

## I. Background

In deciding this motion, we must take the facts alleged in the counterclaim as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). The presentation of the facts is supplemented by the terms of a contract attached to the complaint and by the admissions set forth in the answer to the complaint and reply to the counterclaim. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 (1969).

Hollymatic is engaged in the manufacture, distribution and sale of meat processing, meat handling, and food portioning equipment. Through a network of independent, authorized dealers, Hollymatic sells its products to meat processors, restaurants, supermarkets, institutional food suppliers and wholesale butchers.

From 1946 through 1978, Holly was the chief executive officer, principal engineer and inventor for Hollymatic's predecessor in interest. Between 1978 and 1982, Holly worked for Hollymatic's predecessor as an independent consultant pursuant to a number of written agreements. During this period, he developed a new invention, the "Conversion," which attached to meat patty molding machines, including Hollymatic models, and resulted in a differently formed patty.

On September 29, 1982, Holly entered into a contract with Hollymatic ("Agreement") whereby Holly agreed to serve as

---

**1.** A third defendant, Marvel Inc., is not a party to the counterclaim and is not involved in the motion under consideration.

an independent consultant for the year beginning October 15, 1982. Among other provisions, the Agreement stated that Holly was to grant to Hollymatic "the exclusive right to sell the Conversion either as a part of, or for the purpose of later attachment to, any of [Hollymatic's] newly manufactured food patty molding machines." Agreement, ¶ 7. It also provided that its terms were to be construed in accordance with Illinois law. *Id.* ¶ 16. Sometime after the Agreement was formed, Holly and his partners established Holly Systems, a corporation engaged in the leasing and sale of food portioning equipment.

## II. Count II (Fraud)

■ Count II of the amended counterclaim begins by incorporating the allegations of Count I, the breach of contract claim. In Count I, the counterplaintiffs allege that Hollymatic failed to perform two implied obligations contained in the Agreement. The first is a duty to make good faith efforts to market the Conversion and is alleged to arise from ¶ 7 of the Agreement[2]; the second, allegedly arising from ¶¶ 7.10 and 1.2, is a duty not to interfere with Holly's right to sell the Conversion.[3]

In Count II, the counterplaintiffs attempt to convert these allegations into a fraud claim by additionally claiming (1) that Hollymatic falsely represented its intention to perform its obligations under the Agreement; (2) that Hollymatic's representations were known by Hollymatic to be false; (3) that Hollymatic made the representations with the intent to induce Holly to enter the Agreement; (4) that Holly reasonably relied on the misrepresentations; and (5) that Holly suffered damages as a result of his reliance. Thus, the allegations of Count II track the five essential elements of common law fraud in Illinois. *See, e.g., Soules v. General Motors Corp.,* 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980); *Higgins v. Kleronomos,* 121 Ill. App.3d 316, 76 Ill.Dec. 913, 917, 459 N.E.2d 1048, 1052 (1984).

Hollymatic argues that the defendants have not stated a cause of action for fraud because the alleged misrepresentations related to future conduct, not a present condition of fact. It is true that, traditionally, Illinois courts have been reluctant to entertain actions for "promissory fraud." *See generally,* Pollele, *An Illinois Choice: Fossil Law or an Action for Promissory Fraud?,* 32 DePaul L.Rev. 565, 578–88 (1983). The general rule is that a promise made without intent to perform it is not a misrepresentation. *Roda v. Berko,* 401 Ill.

---

**2.** Section 7 provides in pertinent part:
Holly grants to Buyer [Hollymatic] the exclusive right to sell the Conversion either as a part of, or for the purpose of later attachment to, any of Buyer's newly manufactured food patty molding machines that the Conversion will attach to and that are first sold and delivered by Buyer during the Distribution Period.

**3.** Section 7.10 provides that:
Nothing in this Agreement shall in any manner prevent or limit Holly's right to sell or exploit Conversions or the Invention in any manner he in his discretion deems appropriate, except that Buyer shall have the exclusive distribution rights with respect to its sale of New Machines expressly set forth in this Section 7.
Section 1.2 provides that:
During the Consulting Period, Holly agrees not to enter into an employment or consulting agreement with any other manufacturer of hamburger molding machines sold in the United States ("Other Manufacturer"). However, nothing in this Section 1.2 shall in any manner be deemed to prohibit or restrict Holly from (a) selling or leasing Conversions or any other product to or through any Other Manufacturer, (b) selling or licensing the Invention or any other invention to any Other Manufacturer, or (c) conducting any other business transactions with any Other Manufacturer; nor shall anything in this Section 1.2 be deemed to in any manner prohibit or restrict Holly, in connection with any transactions or business described in (a), (b) or (c) of this Section 1.2, from providing any consultation, advice or other service necessary or appropriate to carry out any such transactions or business. Except as expressly provided in this Section 1.2, nothing contained in this Agreement shall restrict Holly's right to engage in or conduct any other business or activity that he in his sole discretion shall desire, and Holly may serve any corporation, business organization, individual or other party in any capacity whatsoever during the time Holly is providing consulting services under this Agreement.

335, 340–41, 81 N.E.2d 912, 915 (1948). A recognized exception exists, however, "where the false promise or representation of intention or of future conduct is the scheme or device to accomplish the fraud." *Id.* at 340, 81 N.E.2d 912, 915; *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 334, 13 Ill.Dec. 699, 706, 371 N.E.2d 634, 641 (1977); *Sommer v. United Savings Life Ins.*, 128 Ill.App.3d 808, 813–14, 84 Ill.Dec. 77, 82, 471 N.E.2d 606, 611 (1984). The question we must decide is whether the general rule or the exception controls the instant case.

The Illinois cases are not easily reconciled and the Illinois courts have rarely made more than half-hearted attempts to do so. Certainly the language in which the exception is stated is not illuminating in itself. One court of appeals suggested that a scheme or device was equivalent to a "carefully constructed plan of deceit." *Metropolitan Bank & Trust Co. v. Oliver*, 4 Ill.App.3d 975, 978, 283 N.E.2d 62, 64 (Ill.App.Ct.1972); *see also Zaborowski v. Hoffman Rosner Corp.*, 43 Ill.App.3d 21, 24–25, 1 Ill.Dec. 465, 468, 356 N.E.2d 653, 656 (Ill.App.Ct.1976) (total facts must show scheme or device). Another court, acknowledging that "the exception tends to engulf and devour much of the general rule," recently held that a scheme had been properly alleged when the defendant had done no more than make a promise without intention of performing it. *Vance Pearson, Inc. v. Alexander*, 86 Ill.App.3d 1105, 1112, 42 Ill.Dec. 204, 209, 408 N.E.2d 782, 787 (1980); *see also Brudnicki v. General Elec. Co.*, 535 F.Supp. 84, 88 (N.D.Ill.1982) (exception applied where misrepresentation was an "integral step in achieving the agreement"). In short, the precedents appear to turn upon a case-by-case weighing of the equities, rather than clearly-defined principles.

We are aware of no Illinois case in which an alleged or even proven *implied* promise or representation was found to be a sufficient basis for applying the scheme or device exception. After examining the entire contract in this case, we find that the alleged representations at issue—the duties

not to interfere and to make good faith efforts to sell the Conversion—are not expressly stated in the Agreement. Holly and Holly Systems admit as much in their pleadings, where they refer to each of the duties as "implied" duties. Amended Counterclaim, ¶¶ 8, 9. We have some doubt as to whether these obligations can even be implied, but for present purposes we assume they can. Even so, we do not believe an Illinois court would apply the scheme or device exception in this case.

Under Illinois law, fraud is a conscious, calculated course of behavior designed to induce the victim's reliance. The continued life of the general rule against promissory fraud demonstrates that it remains a disfavored cause of action, at least in Illinois and a small number of other jurisdictions. *See* W. Prosser, *Handbook on the Law of Torts* § 109 (4th ed. 1971). Probably this is because fraud, focusing as it does on a subjective state of mind, can be very easy to allege and very difficult to prove or disprove. *See, e.g., Kriegel v. Miedema*, 20 Ill.App.2d 235, 241, 155 N.E.2d 815, 818 (1959). In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief. If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed. Presumably, it is this result that the Illinois rule seeks to avoid.

When allegations of fraud rest solely upon implied misrepresentations, the assertion that the defendant never intended to perform is obviously weaker and the case for dismissal is even stronger. In such a case, each of the five elements of the cause of action is impaired: any misrepresentation is less likely to be material, knowingly made, and intended to induce reliance; and any reliance so induced is less likely to be reasonable and to engender damages. In short, the risk that a worthy

claim will be quashed at its inception is obviated by the probability that the claim, if allowed to proceed to trial, could never be substantiated. For these reasons, we hold that the threshold for bringing a fraud action under the scheme or device exception is not met where the claimant alleges no more than an implied promise or representation as the predicate for fraud.[4]

Holly and Holly Systems have already been given an opportunity to amend their counterclaim after being notified of Hollymatic's objections in its first motion to dismiss. (Hollymatic refiled the motion after the amended counterclaim was filed). Under these circumstances, it is clear that Holly and Holly Systems can prove no set of facts that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The counterplaintiffs have tried to bring their case within the exception by alleging that Hollymatic's representations "were the scheme used to accomplish a fraud on Holly Systems and Holly." Amended Counterclaim, Count II, ¶ 20. We are not required to accept legal conclusions stated in a pleading and we decline to do so here. *Briscoe v. Lahue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429, 432 (7th Cir.1978).

### III. Count V (Product Disparagement)

Hollymatic next contends that Count V of the counterclaim must fall because Holly and Holly Systems have failed to allege special damages. According to Hollymatic, special damages are an essential element of a product disparagement claim. The counterplaintiffs reply, first, that no allegations of special damages are necessary, and, al-ternatively, that they have sufficiently pleaded special damages.

It is impossible to determine who has the better of the argument. The parties appear to have assumed that the products disparagement claim would be adjudged according to "general principles," but this is of course prohibited under *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We must first determine the law to apply. In so doing, we must apply the choice of law rules that an Illinois court would apply in a products disparagement case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Although we have found no direct case authority on point, we think it probable that an Illinois court would apply the rule of the *Restatement (Second) of Conflicts of Law*, which provides that "the local law of the state where the publication occurs determines the rights and liabilities of the parties." *Restatement (Second) of Conflicts of Law* § 149 (1971). In cases where the offending communications are published simultaneously in more than one state, "the local law of the state which, with respect to the particular issue, has the most significant relationship" applies. *Id.* § 150(1).[5] Under the *Restatement Second* approach, it is even possible, when the same communication is made to different persons in different states, that each communication will be governed by a different law. *Id.* § 149, comment a.

While the counterclaim is sufficiently informative to satisfy the liberal rules of notice pleading, it does not apprise the Court of the essential facts necessary to making a reasoned choice of law. Count V states in pertinent part that:

---

4. The parties also have briefed the question of whether the counterclaim meets the particularity requirement of Federal Rule of Civil Procedure 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity....."). Our holding is not based on any failure to comply with that rule. Rather, the defect lies solely in Count II's failure to state a cause of action under Illinois law.

5. Sections 149 and 150 by their terms relate to defamation cases but, as § 151 and its accompanying comment make clear, they are also applicable to product disparagement cases. *Restatement (Second) of Conflicts of Laws* § 151, comment a; *see also System Operations v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1136–39 (3d Cir.1977).

Hollymatic has made false statements to Hollymatic dealers and others concerning the purported poor quality of Holly Systems' conversion devices and products. Hollymatic has also made false statements concerning the purported adverse effect the conversion devices would have on Hollymatic machines to which they are attached.

Amended Counterclaim, Count V, ¶ 70. Nowhere in the pleadings is it stated when, where, or by what means the alleged disparaging comments were communicated; nowhere is it stated by whom or to whom the comments were made, or, indeed, what was said. Under the *Restatement Second* approach—and, we assume, any other approach that an Illinois court might adopt— it is necessary to know at least where the disparaging comments took place before a court rationally can determine whose law to apply.

We decline to presume that Illinois law would apply to the products disparagement claim. First, there is no indication that any of the disparaging remarks were made in Illinois. Second, the Agreement's choice of law provision does not govern in an action for products disparagement. While the choice of law provision is pertinent to the breach of contract and fraud claims, both of which are directly predicated on the contract, it cannot extend to claims wholly outside the contract and beyond the reasonable expectation of the parties at the time of contracting. At best, the contractual choice of law would be one factor an Illinois court would consider.

We also decline to presume that all states recognize the same elements of a cause of action for products disparagement. (One district court that made this mistake was reversed in *System Operations v. Scientific Games Dev. Corp.*, 555 F.2d 1131 (3d Cir.1977)). Although the traditional rule is that special damages must be pleaded in every such case, we have located a number of cases calling the traditional rule into question, albeit in dicta. *Aerosonic Corp. v. Trodyne Corp.*, 402 F.2d 223, 231 (5th Cir.1968) ("If the complaint of disparagement is based on unfair competition and not libel, no special damages need by alleged or proved"); *Wiegand Co. v. Trent Co.*, 122 F.2d 920, 924 (3d Cir.1941) (same), *cert. denied*, 316 U.S. 667, 62 S.Ct. 1033, 86 L.Ed. 1743 (1942); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F.Supp. 1219, 1235 (D.Colo.1976) ("as a matter of policy there is no reason to require special damages in a business disparagement case"), *modified*, 561 F.2d 1365 (10th Cir.1977), *cert. denied*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978); *Testing Systems, Inc. v. Magnaflux Corp.*, 251 F.Supp. 286, 290 (E.D.Pa. 1966) ("the rule respecting special damages continued in force long after its *raison d'etre* had passed"); *Royer v. Stoody*, 192 F.Supp. 949, 953 (W.D.Okla.1961) ("the trend is toward doing away with the necessity of alleging special damages").

In light of what appears to be a growing trend of dissatisfaction with the general rule, we think a more searching examination of the applicable law, whatever it may be, is in order. In short, it cannot be said at this stage what law will apply, and it cannot be said that Holly and Holly Systems will be unable to prove facts entitling them to recover in a products disparagement theory under some state's law. *Linder Steel Erection v. Alumisteel Systems*, 88 F.R.D. 629, 631 (D.Md.1980). Discovery may fill out the missing facts and Count V will stand or fall on that basis.

## IV. Conclusion

Hollymatic's motion to dismiss Counts II and V of Holly and Holly Systems' first amended counterclaim is granted as to Count II and denied as to Count V.

An appropriate order will enter.