COFFEY, Circuit Judge.
Eric Steven Bower sued Ultramontane Associates (Ultramontane), its president, E. Michael Jones, and its business manager, Ruth Jones, for breach of an employment contract, breach of an oral agreement to put that contract into writing, fraud, and promissory estoppel. The district court granted summary judgment for the defendants on the breach of the oral agreement, fraud, and promissory estoppel claims, and dismissed the claim for breach of an employment contract on statute-of-frauds grounds. The court thereafter denied Bower’s motion to amend his second amended complaint to add a modified breach-of-employment-contract claim and a claim for equitable estoppel. Bower appeals each of these rulings. We affirm in part, reverse in part, and remand.
I. BACKGROUND
In May of 1988 E. Michael Jones contacted Bower about joining his firm as the Publisher for Fidelity, a magazine produced by Ultramontane. Bower, who was employed at the time but looking for a new job, accepted the offer after negotiating with Jones over an incentive program, as well as the usual terms of employment, including salary, expenses, and vacation time. Bower asked Jones to memorialize the oral agreement in a written contract, which he agreed to do. Later that month Jones displayed to Bower a draft agreement containing the terms they had discussed. However, when Bower began work on June 1, 1988, the final written contract was not ready. During the next few weeks Bower repeatedly asked for the written contract, but Jones, though assuring him that a contract was forthcoming, said that one would not be ready for a while because his attorney was on vacation and needed more time to work on it.
Accepting this explanation, Bower stayed at Ultramontane, letting another job offer (with a higher salary but without an incentive program) lapse. Much of Bower’s time at Ultramontane was devoted to preparing a grant proposal to publish a book about the University of Notre Dame.[1] He finished a draft of the grant proposal on July 18, 1988 and submitted it to Jones. The two of them discussed the draft proposal the next day, including Bower’s plan for an oral presentation to the Domino’s Foundation, which offered grants for such projects. Two days later Jones discharged Bower, giving him no other reason than that “things just weren’t working out.” This occurred even though Jones had advised Bower that his written contract would be ready that very same week.
Bower thereafter filed a complaint against Ultramontane, Michael Jones, and Ruth Jones, claiming that they had committed fraud in luring him to the company with false promises of a guaranteed one-year term of employment and a written contract, just so they could take advantage of his writing skills and professional contacts in order that they might obtain the grant, and thereafter discharge him before he received his agreed-upon share of the grant proceeds. He further alleged a breach of contract as to the promised one year of employment.
The court dismissed the contract count, finding that the employment contract was unenforceable because it was oral and could not be performed within a year of its making, and thus failed to satisfy Illinois’ version of the statute of frauds. Ill.Rev. Stat. ch. 59, § 1. Bower filed a second amended complaint, reiterating the fraud charge and adding counts based on breach of the oral agreement to put the employment contract into writing and promissory estoppel. The court granted summary judgment to the defendants on all three claims, relying primarily oh one case, Sinclair v. Sullivan Chevrolet Co., 31 Ill.2d 507, 202 N.E.2d 516 (1964). As to the *1007 fraud claim, the court found that, in essence, Bower was actually making a claim of equitable estoppel, asking it to estop the defendants from pleading the statute of frauds because they had also committed fraud in not reducing the oral agreement to a written contract of employment. The court further refused to estop the defendants from pleading the statute of frauds, holding that Bower failed to present evidence sufficient to raise an issue as to the defendants’ fraudulent intent in not reducing the agreement to writing, and that Sinclair barred the use of equitable estoppel to preclude a statute-of-frauds defense. The court applied Sinclair to the claim for breach of the alleged oral contract by failing to reduce the agreement to writing, finding that Sinclair implied that agreements to put into writing an agreement that falls within the statute of frauds must themselves satisfy the statute of frauds. Id., at 518-19. Since the oral agreement failed to satisfy the statute, it could not be enforced. Finally, the court relied on Sinclair in holding that promissory estoppel, like equitable estoppel, could not be used to bar a statute of frauds defense.
Reacting to this decision, Bower sought leave to amend his second amended complaint by adding two new counts. The first, Count VIII, was for breach of the employment contract. The contract alleged herein is different from that alleged in Bower’s first amended complaint, which the court had dismissed. It has fewer terms and conditions of employment, and Bower apparently believed that the contract in Count VIII could satisfy the statute of frauds, even though the more elaborate contract alleged in his first complaint had not done so. The second addition, Count IX, was for equitable estoppel. Bower argued that this should apply to prevent the use of the statute of frauds as a bar to his breach of contract claim, even though the court had expressed its opinion of equitable estoppel in rejecting his fraud claim. The court refused to allow the addition of either claim, saying Bower’s request was “denied on the basis of prior rulings in this action.”
II. ISSUES
Bower raises three claims on appeal. Initially, he contends that the district court abused its discretion in refusing his request to amend his second amended complaint. Second, he alleges error in the court’s grant of summary judgment oh the fraud, breach of oral contract, and promissory estoppel claims of his second amended complaint. Third, he asserts that the court should not have dismissed the breach-of-written-contract claim contained in his first amended complaint.
III. DISCUSSION
A. Denial of Leave to Amend the Second Amended Complaint
In his proposed amendment to his second amended complaint, Bower sought to remedy the defects that had caused the court to dismiss his initial breach-of-written-contract claim. That claim, set forth in Count III of his first amended complaint, alleged a contract guaranteeing Bower one year of employment, a $29,000 salary, a share of the revenues from advertising, subscriptions, and grants, and reimbursement for expenses. He had argued that this contract satisfied the statute of frauds because the defendants had admitted these contract terms in their answer to his complaint. Poulos v. Reda, 165 Ill.App.3d 793, 117 Ul.Dec. 465, 471, 520 N.E.2d 816, 822 (1987) (“A pleading, such as an answer” may be used to satisfy the statute of frauds). Actually, the defendants admitted only to promising the $29,000 salary, reimbursement of expenses, and to provide health insurance for Bower and his family. Since the defendants, in their answer, had not admitted to the contract terms that Bower alleged, the court found that the contract sued upon failed to satisfy the statute of frauds. See 2 A. Corbin, Corbin on Contracts, § 319, at 152 (“Of course, an admission in the answer that an oral contract was made, but asserting that its terms were different from those alleged by the plaintiff, is not an admission of the contract sued on.”)
*1008 To remedy this defect in his pleading, Bower attempted to add Count VIII to his second amended complaint, alleging a contract' with fewer terms. This time he claimed that the defendants had promised to reduce the contract to writing, giving him a one-year term of employment, a $29,-000 annual salary, and health insurance. Since the defendants had admitted the salary and insurance terms, Bower had a much better chance of establishing that the contract satisfied the statute of frauds. Nevertheless, the court refused to let him add this count, giving no other reason than its “prior rulings.” Presumably, the court was referring to its dismissal of the original contract claim under the statute of frauds. Bower challenges the court’s decision, arguing that he should have been allowed to add Count VIII to his second amended complaint.
When a party seeks to amend a complaint after the defendant has answered, the district court has discretion in deciding whether or not to allow the amendment, and we review its decision for an abuse of that discretion. J.D. Marshall Int’l, Inc. v. Redstart, Inc., 935 F.2d 815, 819 (7th Cir.1991); Fed.R.Civ.P. 15(a). Although Rule 15 states that leave to amend shall be “freely given,” it may be denied where there is undue delay, bad faith, dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opponent, or where the amendment would be futile. Foman v. Davis, 371 U.S. 178, 183, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The district court did not mention any of these grounds by name, but the parties focus on futility, undue delay and prejudice, and the repeated failure to cure deficiencies. Accordingly, we direct our attention to these arguments.
An amendment is futile when it “merely restates the same facts using different language, or reasserts a claim previously determined.” Wakeen v. Hoffman House, Inc., 724 F.2d 1238, 1244 (7th Cir. 1983). Similarly, an amendment may be futile when it fails to state a valid theory of liability, Verhein v. South Bend Lathe, Inc., 598 F.2d 1061 (7th Cir.1979), or could not withstand a motion to dismiss. Glick v. Koenig, 766 F.2d 265 (7th Cir.1985). The district court could have believed- that the contract alleged in Count VIII was, like the original written contract claim, barred by the statute of frauds, and since such a claim could not withstand a motion to dismiss, it could not be added to the complaint. We must consider whether such a decision would be proper under Illinois law.
The Illinois statute of frauds requires contracts that cannot be fully performed within a year of their making to be in writing, or they are unenforceable. 111. Rev.Stat. ch. 59, § 1. The writing must contain the agreement’s essential terms and be signed by the party against whom enforcement is sought, and may consist of several different documents. Chapman v. Freeport Securities Co., 174 Ill.App.3d 847, 124 Ill.Dec. 289, 293, 529 N.E.2d 6, 10 (1988). When several documents are used they need not all be signed, so long as the signed writing expressly refers to the unsigned writing or the documents are so connected, physically or otherwise, as to show that they relate to the same contract. Id.; Prodromos v. Poulos, 202 Ill.App.3d 1024, 148 Ill.Dec. 345, 349, 560 N.E.2d 942, 946 (1990).
The salary and health insurance terms of the contract alleged in Count VIII were admitted in the defendants’ answer to Bower’s first amended complaint, which qualifies as a signed writing capable of satisfying the statute of frauds. Poulos v. Reda, 117 Ill.Dec. at 471, 520 N.E.2d at 822. Bower argues that the one-year term has also been admitted, both in Michael Jones’s deposition and in the draft contract prepared by Ultramontane’s attorney and shown to Bower.
During his deposition, Michael Jones answered the following questions:
Q: Now, when Eric Bower first started working for you, it was contemplated that there would be a written contract between you and Mr. Bower, isn’t that correct?
A: (Nodding)
*1009 Q: For what duration was this contract to run?
A: A year or two.
R. 166, at 4-5. A deposition may qualify as a signed writing for statute of frauds purposes, see II Farnsworth on Contracts, § 6.7, at 134 (1990) (“To the extent that the statute’s function is viewed as evidentiary, it is difficult to see why the statute should not be satisfied by a written admission in a pleading, stipulation, or deposition”), and Jones’s statements establish that at least a one-year contract had been agreed to. The memorandum used to satisfy the statute of frauds must demonstrate that there has been an agreement as to the essential terms of the contract, evidencing a “meeting of the minds.” See Dresser Industries, Inc. v. Pyrrhus AG, 936 F.2d 921, 929 (7th Cir.1991). Jones’s statement proves that the parties were contemplating a specific tenure for Bower, and that this tenure would span, at the least, a full year.
Furthermore, Bower supports his contention by pointing to the draft contract shown to him before he began work at Ultramontane.[2] The first paragraph of this draft stated a one-year term of employment.
1. TERM OF EMPLOYMENT. Employer hereby employees [sic] the Employee and Employee hereby accepts employment with the Employer for a period of one (1) year, beginning the first day of June, 1988. This agreement may be terminated earlier or renewed as hereinafter provided.
R. 181, Ex. 5. This paragraph demonstrates that the defendants specifically intended to give Bower a one-year contract, with certain limitations on their right to discharge him. There is one problem, however; the draft contract is not signed by any of the defendants. Thus, the draft contract cannot be used to satisfy the statute of frauds (which requires that contracts that cannot be performed within a year of their making be in writing and signed by the party to be charged in order to be enforceable) unless one of the signed writings specifically refers to it, or somehow demonstrates that it relates to the same contract. Chapman, 124 Ill.Dec. at 293, 529 N.E.2d at 10. Michael Jones’s deposition, signed by Jones, qualifies as a signed, written document, and directly refers tó the unsigned draft contract, meaning that the draft can be used to satisfy the statute of frauds.
Q: I am going to hand you back what’s been marked Exhibit No. 1 and ask you if you recognize what I’ve handed you? A: It looks like the contract — the draft that my lawyer sent me.
* 5¡S $ Sfc ¡jt *
Q: I am going to ask you one other question. If I could look at this for a second. The postmark on this [draft contract] says May 6, 1988, and you can correct me if I’m wrong.
MR. APPEL: I can’t tell whether it’s a 6 or 15. There is also a 15 on the other side.
Q: May 6 or May 15. Does looking at the postmark refresh your recollection at all about when you requested Mr. Appel to draft this contract.
A: It was around this time.
Q: But it was before Mr. Bower ever started working for you?
A: I suppose it was.
* # * * * *
Q: Did you ever show that contract to
Mr. Bower?
A: I believe I did.
R. 166, Ex. A, at 41; R. 131, Ex. 3, at 42-43. Jones went on to discuss several specific terms in the draft contract and their intended meaning to himself and Bower. It is clear from this discussion that the draft incorporated the terms Jones and Bower agreed to, though for our purposes it is only important that it states the one-year employment term, meaning that all the terms of the contract alleged in Count VIII are admitted in a memorandum suffi *1010 cient to satisfy the statute of frauds. Thus, Count VIII would not have been futile, and Bower should be allowed to add it to his complaint, unless some other ground justifies the district court’s decision (though, as noted earlier, the district court did not elucidate any ground for its decision).
The defendants argue that the court’s refusal to allow the amendment may be supported because allowing Bower to add Count VIII would have caused undue delay or unduly prejudiced their case. We disagree. Bower did not have access to the writings supporting Count VIII until late in discovery, when he deposed Michael Jones and received a copy of the draft contract, both after he had filed his second amended complaint. By seeking to add Count VIII soon after he had the documents to support it, Bower did everything in his power to foreclose any claim of undue delay. We also are of the opinion that allowing the addition of Count VIII would not have unduly prejudiced the defense. Legally, the claim and likely defenses to it are quite similar to those involved in the original written contract claim, meaning that the defendants will incur little extra time or expense in defending the claim. Also, the necessary discovery on the claim is complete. A similar analysis applies to the defendants’ contention that Bower’s amendment was improper because of his “repeated failure to cure deficiencies.” True, he had previously filed a number of amendments but, as noted, the documents supporting Count VIII were not available until late in discovery, and Bower did not sleep on his rights once he was able to assert them. We hold that the district court abused its discretion in not allowing Bower to amend his complaint by adding Count VIII.
The second item Bower hoped to add to his complaint, Count IX, alleged that the defendants should be equitably estopped from using the statute of frauds as a defense to Bower’s contract claim, because doing so would allow the defendants, who had lured Bower to Ultramontane with false promises of a written, one-year contract to hide behind the statute and complete their fraud. As before, the district court denied leave to amend based on its “prior rulings.”
We assume that the relevant prior ruling occurred when the court granted summary judgment on the fraud claim in Bower’s second amended complaint. In giving its reasons, the court stated:
[T]he Illinois Supreme Court has ruled that equitable estoppel does not apply to save an oral agreement for services, such as employment, otherwise unenforceable because of the statute of frauds. Sinclair, 31 Ill.2d at 510 [202 N.E.2d 516]; 37 CJS, “Statute of Frauds”, ¶ 247. Equitable estoppel normally requires an equitable remedy such as specific performance, and specific performance is normally not decreed in a suit involving a contract for services.
Memorandum Opinion & Order, at 6. Contrary to the district court’s belief, however, Illinois apparently does allow the use of equitable estoppel to bar an opponent’s statute of frauds defense. Sinclair v. Sullivan Chevrolet Co., 31 Ill.2d 507, 202 N.E.2d 516 (1964), simply held that equitable estoppel could not be used in that case because there was no proof of any concealment or misrepresentation of a material fact. Id. at 519. Cases cited approvingly in Sinclair plainly recognize the availability of equitable estoppel in statute of frauds cases. Loeb v. Gendel, 23 Ill.2d 502, 179 N.E.2d 7 (1961); Ozier v. Haines, 411 Ill. 160, 103 N.E.2d 485 (1952); see II Farnsworth on Contracts, § 6.12, at 177 (discussing the use of equitable estoppel to prevent an opponent from asserting the statute of frauds).
We will not reverse the district court on Count IX, for that Count fails to state a valid claim for relief, and would therefore be futile. Glide, 766 F.2d at 268. Equitable estoppel requires, among other things, proof of an intentional misrepresentation or concealment of a material fact by the party to be estopped. Vaughn v. Speaker, 126 Ill.2d 150, 127 Ill.Dec. 803, 533 N.E.2d 885 (1988), cert. denied, 492 U.S. 907, 109 S.Ct. 3218, 106 L.Ed.2d 568 *1011 (1989). Bower argues that Michael Jones made such a misrepresentation when, in response to Bower’s requests for a written contract, he stated at various times that his attorney was on vacation, or that he was working on the contract. Nothing in Count IX, however, refutes the accuracy of these statements. First of all, the defendants’ attorney actually was on vacation in late June and early July of 1988. And even if Jones told Bower that the attorney was on vacation at some time when he was not, there is no evidence that Jones deliberately misled Bower about his attorney’s absence. Further, Bower has presented nothing to establish that the attorney was not working on the contract when Jones said he was. That Bower was discharged before the contract was completed does not necessarily mean that Jones intentionally misled him. Therefore, because the plaintiff has failed to make out a prima facie case for equitable estoppel, we affirm the district court’s refusal to let him add Count IX to his second amended complaint.[3]
B. Summary Judgment
The district court granted summary judgment on the first three counts of Bower’s second amended complaint. These counts alleged promissory fraud, breach of an oral contract to put the employment agreement in writing, and promissory es-toppel. Our review is de novo, and we view the record and all reasonable inferences that may be drawn from it in the light most favorable to the nonmovant. Kara-zanos v. Navistar Int’l Transp. Corp., 948 F.2d 332, 335 (7th Cir.1991). Summary judgment is appropriate when the materials before the court demonstrate “that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c).
1. Promissory Fraud
Count I of the second amended complaint charged the defendants with intentionally making false promises and representations to Bower as part of a scheme to induce him to work for Ultramontane long enough to prepare the Notre Dame book proposal, implement his fund-raising skills, and reveal his professional contacts and knowledge. Then, once he had outlived his usefulness, the scheme would conclude with Ultramontane’s firing him and refusing to pay' him the promised percentages of grants received and subscription and advertising revenues. The specific representations that Bower claims were false and calculated to induce him to work for Ultramontane were that: (1) he would receive five percent of the revenue from new subscriptions, twenty percent of advertising revenue, and twenty-five percent of all other monies received through other sources, such as book grants; (2) the agreement would be put into writing; and (3) he had a guaranteed one-year term of employment. Bower alleges that none of these promises were kept, and claims that he has been defrauded because he passed up another job offer in reliance on the promises.
Promissory fraud is generally not actionable in Illinois, but there is an exception to this rule “where the false promise or representation of intention of future conduct is the scheme or device to accomplish the fraud.” Steinberg v. Chicago Medical School, 69 Ill.2d 320, 13 Ill.Dec. 699, 706, 371 N.E.2d 634, 641 (1977). This exception is broad, and has even been viewed as swallowing the rule barring promissory fraud actions. Vance Pearson, Inc. v. Alexander, 86 Ill.App.3d 1105, 42 Ill.Dec. 204, 209, 408 N.E.2d 782, 787 (1980). The scheme exception applies where “a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where the other party relies on it to his detriment.” Concord Industries, Inc. v. Marvel Industries Corp., 122 Ill.App.3d 845, 78 Ill.Dec. 898, 901, 462 N.E.2d 1252, 1255 (1984); see also Price v. Highland Community Bank, 722 F.Supp. 454, 460 (N.D.Ill.1989) (Posner, J.) (“[I]f the intention behind the intentionally false promise *1012 is to induce the promisee to act for the promisor’s benefit, the promise is actionable.”) Bower stated that he relied on the defendants’ promises to his detriment by letting another job offer lapse, but the district court granted summary judgment to the defendants on this claim, finding that Bower had not presented evidence sufficient to establish that the defendants acted with fraudulent intent.
As to the first alleged promise, to pay Bower a certain percentage of advertising and subscription revenues, summary judgment was proper, as Bower has presented no evidence demonstrating that the defendants failed to keep the promise. See Consolidated Bearings Co. v. Ehret-Krohn Corp., 913 F.2d 1224, 1227 (7th Cir.1990) (to prove promissory fraud, plaintiff must show that the promise was not carried out). Fidelity never received the book grant and Bower has failed to present any evidence of any subscription or advertising revenue allegedly received by . the defendants during his tenure, much less any information establishing that he did not receive his share of any such revenue. Absent proof that the defendants failed to pay him any of the sums allegedly promised, Bower is unable to make out a case for promissory fraud.
As to the second alleged promise, to reduce the employment contract to writing, Bower has failed to adduce any evidence demonstrating that the defendants never intended to keep their word. Promissory fraud is a disfavored cause of action in Illinois because fraud is easy to allege and difficult to prove or disprove. Hollymatic Corp. v. Holly Systems, Inc., 620 F.Supp. 1366, 1369 (N.D.Ill.1985). Thus, the burden on a plaintiff claiming promissory fraud is deliberately high.
In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent — a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief. If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed. Presumably, it is this result that the Illinois rule seeks to avoid.
Id. The record falls short of establishing that the defendants never intended to give Bower a written contract, though they actually failed to do so. This failure may be ascribed to the fact that Bower was only at Fidelity for seven weeks, and the defendants’ attorney was on vacation for at least two of those weeks. Bower voluntarily began work without a written contract, and while the fact that he never received a written contract before being discharged is unfortunate for him, we refuse to infer bad intent on the part of the defendants based on this fact alone. See id. As Judge Pos-ner has observed in discussing a claim of promissory fraud, “A change of mind can be a breach of contract ... but it is not fraud.” Price, 722 F.Supp. at 459-60. It’s quite possible that defendants might very well have changed their mind about Bower during his stay at the company, and while he may attempt to demonstrate that this was a breach of contract on remand, more is needed to state a claim for fraud. Since he has failed to produce more, summary judgment as to this promise was proper.
A similar analysis applies to the third alleged promise, to employ Bower for a full year. Again, it is true that the defendants did not employ Bower for a full year, but that alone is insufficient to make out a claim of promissory fraud, since there is no proof that the defendants made the promise never intending to keep it. Without “specific, objective manifestations of fraudulent intent” there can be no promissory fraud. Hollymatic Corp., 620 F.Supp. at 1369. Bower has not pointed to any specific manifestations of fraudulent intent here, basing his argument on circumstantial evidence and inference. Thus, summary judgment as to this promise was also proper.
2. Breach of Oral Contract
Count II of the second amended complaint alleged that the defendants breached a separate oral agreement to reduce the employment contract to writing. He claimed that this agreement is a distinct *1013 contract, separate from the alleged employment contract. Yet Bower does not mention what, if any, consideration he gave in return for the promise to put the employment contract in writing. Indeed, the claim is simply an attempt to recycle his promissory fraud and promissory estoppel claims into an alternative ground for recovery. The promise to provide a written contract is relevant to those claims, but without some proof of consideration (rather than later, detrimental reliance), Bower has not stated a cause of action for breach of contract, and we agree that the granting of summary judgment on this count was proper.
3. Promissory Estoppel
Count III of the second amended complaint sought to estop the defendants from pléading the statute of frauds in light of their earlier promises to employ Bower for a year and provide a written contract. Although the availability of promissory estoppel to preclude a statute of frauds defense is an interesting issue, and is apparently unsettled in Illinois, see Phillips v. Britton, 162 Ill.App.3d 774, 114 Ill.Dec. 537, 516 N.E.2d 692 (1987), we need not address the claim, as Bower has waived it by his failing to directly address it in his brief to this court. See, e.g., United States v. White, 879 F.2d 1509, 1513 (7th Cir.1989).
C. Dismissal of the Breach-of-Written-Contract Claim in the First Amended Complaint
Bower’s last argument contests the district court's dismissal of his first contract claim. As discussed in section A, supra, this claim alleged a contract with many specific provisions. The defendants admitted some, but not all, of these provisions in their answer to Bower’s first complaint. The court dismissed the claim under the statute of frauds because all of the terms of the alleged contract had not been admitted by the defendants. The rule in Illinois is that “a party seeking to enforce an agreement has the burden of establishing the existence of the agreement.” Commonwealth Edison Co. v. Industrial Comm., 167 Ill.App.3d 229, 118 Ill.Dec. 91, 93, 521 N.E.2d 159, 161 (1988). Logically, this includes establishing each term of the agreement alleged. In this case Bower failed to produce evidence of writings containing each term of the contract charged in his first complaint, and that claim was properly rejected. See 2 Corbin, § 319, at 152 (“The contract, admitted in the answer, can be enforced only according to its own terms and conditions.”); Durham v. Harbin, 530 So.2d 208, 212 n. 5 (Ala.1988) (“It is not enough to admit that the contract was made; rather ... there must be some substantial compliance between the contract sued upon and the ‘admitted’ contract.”)
IY. CONCLUSION
In sum, we: (1) reverse the district court’s denial of Bower’s motion to add Count VIII to his second amended complaint; (2) affirm the denial of leave to add Count IX; (3) affirm the grant of summary judgment on the promissory fraud count in the second amended complaint; (4) affirm summary judgment on the breach-of-oral-contract count in the same complaint; (5) hold that the promissory estoppel claim has been waived, and (6) affirm the dismissal of the breach-of-written-contract count in the first amended complaint. Accordingly, this case is remanded for further proceedings.
Affirmed in part, Reversed in part, and Remanded.

. Fidelity is a Catholic magazine and had published many articles about Notre Dame and the state of Catholic higher education. The book would be a collection of these articles, along with other commentary.

. Actually, Bower contends that the draft contract in the record is not the exact same one shown to him, which he claims was marked up and had the blanks filled in. The copy of the draft produced in discovery is unmarked. However, neither party disputes that the terms in the produced draft are the same as in the draft Bower was shown.

. We also note that Bower had two prior opportunities to add an equitable estoppel claim to his complaint, yet neglected to do so. A repeated failure to cure deficiencies is sufficient reason to forbid a proposed amendment. Foman, 371 U.S. at 183, 83 S.Ct. at 230.