NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0109n.06

No. 20-6348

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Mar 08, 2022 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LORENZO SHELTON, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: COLE, KETHLEDGE, and WHITE, Circuit Judges.

KETHLEDGE, Circuit Judge. A jury found Lorenzo Shelton guilty of possessing drugs and firearms while on parole. He argues that the officers here violated the Fourth Amendment when they searched his rooms and cellphone for evidence later used to convict him. We affirm.

I.

In January 2002, Shelton pled guilty in state court to possessing and selling cocaine, and to possessing a firearm with intent to use the weapon in a felony. He was sentenced to 20 years in prison. In October 2015 Shelton was released on parole. He signed a parole certificate in which he agreed to provide his address to his parole officer and to inform the officer if his address changed. Shelton further agreed to let officers search his "person, vehicle, property, or place of residence . . . at any time without reasonable suspicion" and without a warrant.

In July 2016, Shelton told his parole officer that he lived at 317 Tillman Lane in Nashville. That officer, Michael Pasqualetto, soon received anonymous phone calls from a woman who said

that Shelton was selling drugs in a rental car behind his house, and that his house might contain firearms.

Days later, at 7 a.m., Pasqualetto and four other parole officers visited 317 Tillman Lane for the purpose of searching it. Shelton was not there, so Pasqualetto called him and told him to return to Tillman Lane. Shelton showed up about 20 minutes later in a rental car. The officers said they were going to search the house; Shelton replied that he had moved to a different address two weeks before. That address included the word "Chesapeake" and had a "three" in the house number. Shelton verbally consented to a search of the Tillman home, and said his room had been in the basement. At some point, five Metro-Nashville Police Department officers also arrived on the scene.

The parole officers first unlocked Shelton's rental car, in which they found four cellphones and $11,300 in cash. They told Shelton to sit on the front porch while they searched the house itself. Some officers stayed with Shelton on the porch; others went to the basement, which showed no signs of habitation. The officers then searched a bedroom on the first floor, where they found Shelton's driver's license, men's clothing, Pasqualetto's business card, and mail addressed to Shelton. In that same room, they also found three small bags of heroin, digital scales, sandwich bags, and 905 strips of suboxone, a controlled substance. In an adjacent bedroom, they found a sawed-off shotgun.

Meanwhile, on the porch, one of the parole officers noticed that Shelton was texting on his remaining cellphone. An officer took it out of his hands and saw in plain view the message that Shelton had been typing, which read: "Get everything out m". The parole officers then looked through other text messages and pictures on the cellphone; as they did so, another number repeatedly appeared on the screen as it called and texted Shelton's phone. A police officer ran that

number through a database, which provided a physical address associated with the phone number: 3565 Chesapeake Bay Drive.

The police officers arrested Shelton and found a set of keys in his pocket. They put him in a police car and began driving to 3565 Chesapeake. Shelton began to hyperventilate, looked sick, and threw up upon arrival. The officers called an ambulance for him.

Meanwhile, two parole officers knocked on the door of the Chesapeake house and spoke with a 20-year-old woman inside. They asked whether Shelton had been staying there; she said he had been there about two weeks and was dating her mother. She pointed to the room in which Shelton had been staying, which was locked with a deadbolt. The officers unlocked the room with the keys that Shelton had been carrying; inside, they found more heroin, money, a money counter, a Ruger 9mm pistol, and a photograph of Shelton.

A grand jury later indicted Shelton on one count of possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1); one count of possession with intent to distribute a substance containing heroin, in violation of 21 U.S.C. § 841(a)(1); one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924; and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Shelton later moved to suppress the evidence from the Tillman and Chesapeake searches. The district court denied the motion. Shelton proceeded to trial, where a jury found Shelton guilty on all four counts. The district court sentenced Shelton to 30 years' imprisonment. This appeal followed.

II.

Shelton challenges the district court's denial of his motion to suppress. We review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Fletcher*, 978 F.3d 1009, 1014 (6th Cir. 2020).

Shelton first challenges the search of the Tillman address. The officers searched that address pursuant to Shelton's parole certificate, which granted officers permission to search his residence without probable cause. The only question here, therefore, is whether the search complied with Tennessee law regarding parolee searches. *See United States v. Loney*, 331 F.3d 516, 520 (6th Cir. 2003). Tennessee law bars searches of a parolee's residence only if "the search was conducted for reasons other than valid law enforcement concerns"—such as searches that are "intended to cause . . . harm" or "conducted out of personal animosity." *State v. Stanfield*, 554 S.W.3d 1, 12 (Tenn. 2018). Shelton has not made any such showing here. The search of the Tillman home was therefore lawful.

The same is true as to the Chesapeake address, for substantially the same reasons. (We pass over the question whether Shelton has "standing"—in a non-Article III sense—to challenge the search of that residence.) Shelton himself told officers that he had moved to an address that included the word "Chesapeake"; the young woman who answered the door at 3565 Chesapeake said that Shelton had been staying there for two weeks; and that timing matched up with when Shelton himself had said he moved from the Tillman address. The officers therefore had probable cause to think that 3565 Chesapeake was his "place of residence" (the term used in the parole certificate), or at least one of them. Shelton doubts that officers can have probable cause to think that one suspect resides at two addresses. But he offers no authority for that proposition, and as a practical matter a person can have more than one place of residence.

4

Shelton does argue—as part as his challenge to the Chesapeake search—that the officers unlawfully searched his cellphone. But the officers were undisputedly entitled to take the phone from him while he was attempting to text with it, and in doing so they saw in plain view an incoming number that they later traced to the 3565 Chesapeake address. Nothing in that sequence effected an unlawful search of Shelton's cellphone. *See United States v. Herndon*, 501 F.3d 683, 693 (6th Cir. 2007). Nor is this case like *United States v. Fletcher*: the information that led officers to the Chesapeake address did not come from a search of the phone's internal data; and as a parolee rather than a probationer, Shelton had a lesser expectation of privacy than Fletcher did. *See* 978 F.3d 1009, 1018–19 (6th Cir. 2020); *Samson v. California*, 547 U.S. 843, 850 (2006). The search of the Chesapeake residence was lawful.

Shelton's final argument concerns the trial testimony of his cousin, Latez Murphy, who Shelton says was under the influence of drugs when he testified. But "[e]very person is competent to be a witness unless [the Federal Rules of Evidence] provide otherwise." Fed. R. Evid. 601. On this record, the district did not abuse its discretion when it found that Murphy's alleged intoxication affected his credibility, not his competence. *United States v. Callahan*, 801 F.3d 606, 622 (6th Cir. 2015). And Shelton's counsel cross-examined Murphy accordingly.

The district court's judgment is affirmed.